**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ROBERT JUSTIN GARYM THOMAS,
Plaintiff,

v.

ELIZABETH PEYTON, DAVID ZWIRNER GALLERY LLC, SOTHEBY'S HOLDINGS and JOHN DOES 1-5,
Defendants,

Case No.: ______________

## COMPLAINT AND JURY DEMAND

The plaintiff Robert Justin Garym Thomas ("Plaintiff"), by his undersigned attorney, R. Terry Parker, Esq., for his Complaint against the defendants Elizabeth Peyton ("Peyton"), David Zwirner Gallery LLC ("Zwirner"), Sotheby's Holdings Inc. ("Sotheby's"), and John Does 1-5 ("Doe Defendants" and together with Peyton, Zwirner, and Sotheby's, collectively, "Defendants"), alleges as follows:

## SUBSTANCE OF THE ACTION

1. This is a case of willful copyright infringement in violation of 17 U.S.C. §§ 106, 501 *et seq*. Plaintiff seeks compensatory and statutory damages in an amount to be established at trial.

## PARTIES

2. Plaintiff is a professional photographer currently living in Alcalali, Spain.

3. Upon information and belief, Defendant Peyton is a painter living and working in in the state of New York.

4. Upon information and belief, Defendant Zwirner is a limited liability company organized under the laws of Delaware but registered and doing business in New York and can be served at 525 West 19th Street, C/O Tracy Holder, New York, New York, 10011.

5. Upon information and belief, Sotheby's is a corporation organized under the laws of Delaware and registered to do business in New York where it can be served care of Corporate Service Company at 80 State Street, Albany, NY, 12207.

6. The Doe Defendants are persons or entities whose identities are presently unknown and who participated in or benefitted from the infringing conduct alleged herein and will be named upon discovery.

## JURISDICTION AND VENUE

7. This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States, and therefore this Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338(a) (jurisdiction over copyright actions).

8. Personal jurisdiction over Defendants is proper. Defendants are conducting business in this judicial district and committing torts in this state, including without limitation Defendants' copyright infringement, which causes harm in this state and judicial district.

9. Pursuant to 28 U.S.C. § 1391, venue properly lies in this Court because a substantial part of the events giving rise to the claims herein occurred in this judicial district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### A. Plaintiff's Business

10. Plaintiff is a professional photographer with a 35-year archive documenting internationally recognized performers across punk, rock, and Britpop. His photographs—many of which were rediscovered from original negatives—have been publicly exhibited in London

and Brighton and include candid, behind-the-scenes, and live-performance images of artists such as The Clash, Prince, Iggy Pop, The Rolling Stones, The Cure, Blondie, Bob Marley, and Stevie Wonder. His work is widely recognized for its documentary value and historical significance within modern music culture.

11. Plaintiff is the sole author of the following photograph, a candid portrait of brothers Liam Gallagher and Noel Gallagher of the rock band Oasis sharing a lighthearted moment of affection during the height of 1990s Britpop ("Copyrighted Work"):



12. Plaintiff created the Copyrighted Work at an afterparty in Earls Court in 1995.

13. The Copyrighted Work was first published in late 1995 in the United Kingdom and has since then become iconic because it captures a tender moment in the brothers' relationship amid years of hostility. A photograph showing them kissing appears almost surreal. That contrast gives the image much of its power. The image also captures a moment from Oasis at their peak of the Britpop wave. It is also visually unexpected, with two publicly brash and

combative male rock stars showing vulnerability and affection. It is inherently striking for its tenderness.

14. The Copyrighted Work is an original work of authorship.

15. Plaintiff is the sole owner of the copyrights in and to the Copyrighted Work.

16. The Copyrighted Work was first published prominently by the *Daily Mirror* in the United Kingdom. It was subsequently released as a centerpiece in Plaintiff's photography book, *How Does It Feel? - Oasis 1995/2002* published by Hanging Around Books, a Scottish publisher. It has also been widely distributed on the internet.

17. The Copyrighted Work is not a "United States Work" as that term is defined in Section 101 of the Copyright Act and is thus not subject to the registration requirements set by Section 411 of the Copyright Act.

**B. The Solicitation from Sotheby's**

18. In April of 2026, a representative of Sotheby's contacted Plaintiff via email seeking permission to reproduce and publicly display the Copyrighted Work in its online auction catalogue for May 2026. In an email dated April 22, 2026, Sotheby's wrote to Plaintiff stating: "we would like to reproduce it as a comparative illustration on a digital webpage essay. There would be no print or social media component. We'd love to license it for a year's time." Sotheby's later confirmed in a follow-up email on April 22, 2026: "This is correct, the image would not be sold but merely illustrated in an essay." Plaintiff then agreed that Sotheby's could have digital use of the Copyrighted Work for one year and print usage on a Lot Card for 2 weeks in exchange for a payment of $2,000.

19. However, the payment to Plaintiff was delayed and Sotheby's later sought to reduce the licensing fee, explaining:

> We had included your photograph in our catalogue for a work by Elizabeth Peyton; however, at the request of the artist's representative, we removed the photograph from our website. As such, the photograph was never illustrated on the extended lot card as we had originally discussed either. We were so very excited to use and license your amazing photograph on our agreed terms; however, given the circumstances, we are unable to.
>
> The image is not on our website, nor is it on view in our galleries. The photograph was on our website for around a week—if we may kindly adjust the fee to account for the time the photograph was on our website and keeping in mind that it was not used in our exhibition, that would be very appreciated. Please let me know what this fee would be.

20. Plaintiff then agreed to a payment of $1,500.

**C. Plaintiff's Discovery of the Peyton's Infringing Work**

21. After haggling with Sotheby's over a $500 discount on its licensing fee, Plaintiff then learned that the painter Elizabeth Peyton that was referenced in the Sotheby's email is a contemporary American painter who is knwon for copying well known photographs from the rock world in the 1990's to make paintings that have commanded seven-figure valuations.

22. Plaintiff then learned her painting titled *Earl's Court (Liam + Noel)* was auctioned as Lot 104 in Sotheby's The Now & Contemporary Evening Auction, held in New York and was valued by Sotheby's at $1,500,000 to $2,000,000.

23. A copy of a screenshot of Peyton's painting is depicted here:



24. When Plaintiff first saw a copy of the *Earl's Court (Liam + Noel)*, it was no wonder why a representative of Peyton instructed Sotheby's to remove the Copyrighted Work from the auction's catalogue. They were attempting to hide the origins of the painting. If Peyton had allowed her painting at the auction to be juxtaposed against the Copyrighted Work, participants would have seen that Peyton's *Earl's Court, 1996* is just a slavish copy of the Copyrighted Work. She copies the captured iconic moment, the famous feuding Gallagher brothers in a kiss. She copies the theme, the brutish rock stars caught being tender. She copies the composition, the side-profile angle of Liam on the left and the front-facing angle of Noel on the right are identical. She copies their expressions, the facial expression, the contrasting coloring of the lips and the fact. She copies the tilt of the head, the hair, the eyebrows, the placement of their hands and arms, the lighting. The ring worn on Liam's hand remains visible in the same positioning near Noel's collar. The similarities are numerous and so striking that it is impossible that Peyton.

25. The only transformation is the medium itself, and Peyton's slight cropping of the Copyrighted Work and adding different coloring and brush work. This recasting of the Copyrighted Work is classic derivative use: the painting is recognizably copied from the iconic Copyrighted Work.

26. Sometimes a picture, or two pictures, is worth a thousand words:





27. The painting Earl's Court, 1996 is herein after referred to as the "Infringing Work."

28. This is not the first time Peyton has faced allegations of copyright infringement for copying iconic photographs from the rock world. In 2016, the photographer Dennis Morris alleged her painting of John Lydon, p/k/a Johnny Rotten, the lead vocalist of the Sex Pistols, infringed his 1997 photograph of the punk singer. The painting at issue in that dispute was titled John Lyndon, Destroyed (1994) and was to be sold at a Sotheby's auction until, after the infringement allegations, it was reportedly removed by Sotheby's at the request of the consigner.

See “Sex Pistols photographer accuses artist Elizabeth Peyton of copyright infringement,” The Art Newspaper (Feb. 18, 2016) available at https://www.theartnewspaper.com/2016/02/18/sex-pistols-photographer-accuses-artist-elizabeth-peyton-of-copyright-infringement (last accessed Aug. 19, 2026).

**D. Zwirner’s Infringing Conduct**

29. Plaintiff also found copies of the *Earl’s Court (Liam + Noel)* painting at the website operated by Zwirner, one of the world’s most influential, “blue-chip” contemporary art galleries. Founded in 1993 by German art dealer David Zwirner, the business started as a modest 1,600-square-foot space in SoHo, New York. Today, it represents more than 70 internationally renowned artists and estates, operating major physical gallery hubs in New York, Los Angeles, London, Paris, and Hong Kong. A screenshot of the Earl’s Court (Liam + Noel) painting publicly displayed on Defendant Zwirner’s website is depicted here:




30. In order for Zwirner to display copies of the Infringing Work on its web site, it had to make digital reproductions of the Infringing Work and use those digital copies in the

construction of its company's website. Zwirner has thus reproduced, used the Infringing Work in the creation of an unlawful derivative work, publicly displayed copies of the Infringing Work.

31. Upon information and belief, Zwirner has also distributed copies of the Infringing Work by selling, giving away, renting, leasing, or lending copies of the Infringing Work to one or more members of the public.

32. Upon information and belief, Zwirner was paid for selling, renting, leasing, or lending copies of the Infringing Work to one or more buyers.

33. Upon information and belief, Zwirner has profited from the reproduction, distribution, and public display of copies of the Infringing Work, in an amount to be determined in discovery.

**E. Sotheby's Infringing Conduct**

34. Sotheby's held an auction for the sale of the Infringing Work as Lot 104 in Sotheby's The Now & Contemporary Evening Auction, held in New York.

35. Sotheby's valued the Infringing Work at $1,500,000 to $2,000,000.

36. Upon information and belief, Sotheby's distributed the Infringing Work by selling, renting, leasing, or lending the Infringing Work to one or more members of the public.

37. Upon information and belief, Sotheby's paid for its distribution of the Infringing Work.

38. Upon information and belief, Sotheby's profited from its distribution of the Infringing Work in an amount to be determined in discovery.

//

//

**FIRST CLAIM FOR RELIEF**
**DIRECT COPYRIGHT INFRINGEMENT**
**(17 U.S.C. § 101 *et seq.*)**

39. Plaintiff realleges the above paragraphs and incorporates them by reference as if fully set forth herein.

40. The Copyrighted Work is an original work of authorship, embodying copyrightable subject matter, subject to the full protection of the United States copyright laws.

41. As author, Plaintiff has sufficient rights, title and interest in and to the copyrights in the Copyrighted Work to bring suit.

42. Upon information and belief, as a result of Plaintiff's licensing and public display of the Copyrighted Work to others, and its worldwide dissemination, Peyton had access to the Copyrighted Work prior to the creation of the Infringing Work.

43. By Peyton's actions, as alleged above, Peyton infringed Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. §501, by creating an unlawful derivative work.

44. Zwirner and Sotheby's had access to the Infringing Work from one or more of the Doe Defendants to be identified in discovery or from Peyton.

45. Zwirner reproduced, distributed, and publicly displayed copies of the Infringing Work and used the Infringing Work in the creation of a derivative work.

46. Zwirner's reproduction, distribution, derivation, and public display of copies of the Infringing Work was without Plaintiff's permission.

47. Sotheby's distributed the Infringing Work through its Auction.

48. Sotheby's distribution of the Infringing Work was without Plaintiff's permission.

49. As a direct and proximate result of Defendants' infringement of Plaintiff's exclusive rights in the Copyrighted Work, Plaintiff is entitled to recover his actual damages pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial.

50. In addition, at Plaintiff's election and pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to recover damages based on a disgorgement of Peyton' profits from the infringing conduct of Defendants, which amounts will be proven at trial.

**SECOND CLAIM FOR RELIEF**
**(Contributory Copyright Infringement)**

51. Plaintiff realleges the above paragraphs and incorporates them by reference as if fully set forth herein.

52. To the extent Zwirner and Sotheby's did not directly distribute the Infringing Work, Zwirner and Sotheby's had either actual or constructive knowledge of the above-described distribution of the Infringing Work and either induced, caused or materially contributed to the distribution of the Infringing Work.

53. The foregoing acts of contributory infringement by Zwirner and Sotheby's violate Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. §501.

54. As a direct and proximate result of the contributory infringement of Plaintiff's exclusive copyrights in the Copyrighted Work by Zwirner and Sotheby's, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to recover his actual damages resulting from distribution of the Infringing Work without paying license fees, in an amount to be proven at trial.

55. In addition, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to recover damages based on a disgorgement of Zwirner and Sotheby's profits from the distribution of the Infringing Work, which amounts will be proven at trial.

**THIRD CLAIM FOR RELIEF**
**(Vicarious Copyright Infringement)**

56. Plaintiff realleges the above paragraphs and incorporates them by reference as if fully set forth herein.

57. As an alternative theory to its contributory infringement claim above, to the extent Zwirner and Sotheby contend they did not contributorily infringe Plaintiff's copyrights, Zwirner and Sotheby had the right or ability to control the distribution of the Infringing Work.

58. As a result of the right or ability of Zwirner and Sotheby's to supervise the distribution described above, Zwirner and Sotheby could have prevented or stopped the distribution of the Infringing Work but did not take any action to do so.

59. Zwirner and Sotheby's had a direct financial interest in the distribution of Infringing Work and benefitted from that infringement.

60. The foregoing acts of vicarious infringement by Zwirner and Sotheby's violate Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. §501.

61. As a direct and proximate result of the vicarious infringement of Plaintiff's exclusive copyrights by Zwirner and Sotheby's, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to recover his actual damages resulting from the reproduction, distribution, derivation, or public display of the Infringing Work, in an amount to be proven at trial.

62. In addition, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to recover damages based on a disgorgement of Zwirner and Sotheby's profits resulting from the reproduction, distribution, derivation, or public display of the Infringing Work, in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

1. A declaration that Defendants have each infringed Plaintiff's copyrights under the Copyright Act;

2. An accounting of all revenue earned by Defendants during the period in which they reproduced, distributed, or displayed the Copyrighted Work, or any portion or derivation of the Copyrighted Work;

3. Awarding Plaintiff all gains, profits, property and advantages obtained or derived by Defendants from their acts of copyright infringement;

4. Awarding Plaintiff his costs and disbursements incurred in this action, including its reasonable attorneys' fees, as provided in 17 U.S.C. § 505 for each instance of copyright infringement;

5. Awarding Plaintiff interest, including pre-judgment interest, on the foregoing sums; and

6. For such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: August 20, 2026

Respectfully submitted,

*/s/ R. Terry Parker*

R. Terry Parker, Esquire
Law Office of R. Terry Parker
43 West 43rd Street, Suite 275
New York, New York 10036
Telephone: (212) 859-5068

Email: terry@rterryparkerlaw.com

*Attorney for Plaintiff*
*Robert Justin Garym Thomas*